**Roger COLLIER, Plaintiff–Appellant,**

v.

**The BUDD COMPANY, Defendant–Appellee.**

No. 95–1227.

United States Court of Appeals, Seventh Circuit.

Argued July 6, 1995.

Decided Sept. 26, 1995.

888

Kenneth N. Flaxman (argued), Lesley A. Redman, Chicago, IL, for plaintiff-appellant.

Debra L. Duzinskas, Ross & Hardies, Chicago, IL, Robert M. Goldich, Rachel S. Lieberman (argued), Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for defendant-appellee.

Before CUMMINGS, CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Roger Collier was terminated from his job as a sales representative for the Budd Company's ("Budd") Polychem division on September 30, 1991, when he was 53 years old. Collier sued under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, claiming that Budd used the restructuring of its sales force as a subterfuge for age discrimination. The district court granted summary judgement to Budd, holding that Collier failed to state a prima facie case of age discrimination or, in the alternative,

that he did not present sufficient evidence of pretext. Collier appeals.

## I. Background

Budd Polychem manufactures plastic components for industrial use. In 1991, Budd Polychem had a small sales force composed entirely of middle-aged men. The salesmen were Collier (age 53), Michael Ondos (age 54), William Shaw (age 48), Dan Joyce (age 45), and Philip Chilcote (age 40).[1] After suffering financial losses in 1989 and 1990, Budd decided to reduce its sales force. Collier and Shaw were laid off, and Joyce voluntarily resigned. Chilcote and Ondos were retained.

Budd then restructured its sales operations to accommodate a reduced force. Previously, Budd had divided the country into five regions (East, South, Midwest, Central, and West/Southwest), with each salesman responsible for a single region. After reducing its sales force, Budd combined several of the regions. Collier's region, the Midwest, was merged with the Central, Ondos' region. Ondos was assigned to the new Midwest/Central region. The East and South (Joyce's and Shaw's regions, respectively) were merged. Mark Nemec (age 39), who was Budd's national field service representative at the time, became the new sales representative for the East/South region. Chilcote remained responsible for the West/Southwest region. Nemec's previous job as national field service representative was eliminated, and the sales representatives took responsibility for performing field service in their various regions. Collier argues that by implementing this plan, Budd discriminated against him and in favor of the younger employees.

1. The record reveals that Budd employed a sixth salesman, Joseph Eliff, during fiscal year 1991. His age and sales territory, however, are not provided.

2. The protected class includes employees "at least 40 years of age." 29 U.S.C. § 631(a).

3. In the district court, Budd argued that Collier's performance was not adequate because he only met 43.4% of his sales quota in the 1991 fiscal

## II. McDonnell Douglas Framework

A plaintiff in an age discrimination case may attempt to prove his claim in one of two ways. He may either present direct evidence of discrimination or follow the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Collier proceeds under the McDonnell Douglas burden-shifting framework.

Under the McDonnell Douglas framework, a plaintiff must first state a prima facie case of discrimination. Collier contends that Budd's reduction and restructuring of its sales force was a pretext for age discrimination. In reduction-in-force (RIF) cases, a plaintiff states a prima facie case by showing that "(1) he was in the protected age group,[2] (2) he was performing to his employer's legitimate expectations, (3) he was discharged, and (4) younger employees were treated more favorably." Roper v. Peabody Coal Co., 47 F.3d 925, 926 (7th Cir.1995). If Collier successfully states a prima facie case, the burden shifts to Budd "to articulate a legitimate, non-discriminatory reason for discharging" him. Roper, 47 F.3d at 926; see also DeLuca v. Winer Industries, Inc., 53 F.3d 793, 797 (7th Cir.1995). An employer that has proffered a legitimate, non-discriminatory reason for the discharge is entitled to summary judgment unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination. DeLuca, 53 F.3d at 797.

## III. Prima Facie Case

Both parties agree that Collier has satisfied the first three elements of the prima facie case: he is a member of the protected class, his job performance was satisfactory and he was discharged.[3] Budd argues, how-

year. This placed him fifth out of Budd's six sales representatives. The slow sales, however, may not have been Collier's fault; Hutton and Theodore Rutkowski (President of Budd Polychem) stated that the Midwest was a difficult sales territory for Budd. In addition, the district court noted that Budd acknowledged that Collier was "adequate as a salesman." On appeal, Budd has abandoned the argument that Collier did not perform up to its legitimate expectations.

ever, that Collier has failed to prove the fourth element: that younger employees were treated more favorably.

The district court held that Collier failed to state a prima facie case because he did not prove that he was replaced by a younger employee. Collier believes that Budd's original plan was to assign Ondos to the East/South region and give Nemec the Midwest/Central, leaving Nemec with Collier's old territory. This theory is supported by Ondos' deposition testimony. Ondos testified that Donald Hutton, the National Sales Manager for Budd Polychem, asked him to move to the eastern region, but he refused because his "family didn't want to move."[4] Regardless of what Budd's original plan may have been, however, Ondos' refusal to move meant that Nemec (the younger employee) was given the East/South region and Ondos, who was one year older than Collier, took the Midwest/Central Region. Thus, the district court held that Collier could not prove he was replaced by a younger employee—rather, he could at most prove that Budd *planned* to replace him with someone younger—a thesis that the court held to be insufficient to support a prima facie case of age discrimination.

■■■ The *McDonnell Douglas* method is a substitute for proving discrimination by direct evidence, and courts allow the burden-shifting framework because employers do "not normally memorialize an intention to discriminate on the basis of age." *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1420 (7th Cir.1992). The prima facie case, and specifically its fourth prong, are meant to identify situations where the "actions taken by the employer, ... if unexplained, are more likely than not based on consideration of impermissible factors." *Allen v. Diebold, Inc.,* 33 F.3d 674, 678 (6th Cir.1994). If Collier could prove that Budd fired him, intending (but failing) to replace him with a younger employee, we do not see how this action raises any less suspicion of an impermissible motive than if, when Budd fired

Collier, it intended to replace him with a younger person and then succeeded in doing so. In either case, Budd's actions, if unexplained, allow the inference that the motivation for Collier's termination was to oust an older employee and hire someone younger. Thus, the district court's reasoning is not consistent with the purpose of the prima facie case requirement.

■■■ In any event, Collier's ability to state a prima facie case does not rest on whether he was replaced by Nemec. This court has occasionally stated that the replacement of an older employee by a younger employee constitutes the fourth prong of the prima facie case. *See Grohs v. Gold Bond Building Products,* 859 F.2d 1283, 1286 (7th Cir.1988) (fourth prong of prima facie case is that plaintiff "was replaced by a younger person"), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989); *cf. Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993) (plaintiff stated prima facie case because he was "over forty years old, performed well at his job, and was fired and replaced by a younger person"). The prima facie case, however, is a flexible standard that "is not intended to be rigidly" applied. *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 567 (11th Cir. 1992). The exact content of the fourth prong may vary from case to case to take differing circumstances into account. RIF cases present such a situation.

■■■ In RIF cases, we do not require a plaintiff to prove that he has been replaced by a younger employee. Generally, when a company reduces or restructures its workforce, it does not simply hire a new person to fill the discharged employee's old position. *See Oxman v. WLS–TV,* 846 F.2d 448, 453 (7th Cir.1988). Rather, as was the case here, jobs are often consolidated and/or work is shifted to other existing employees. Thus, at least in the strict sense, the discharged employee has not truly been replaced by anyone.[5] Consequently, the fourth element of

---

4. At his deposition, Hutton testified that there was never any discussion of moving Ondos to the East Coast.

5. Shifting and/or consolidating work does not constitute replacement; "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes*

the prima facie case in RIF cases is not that the employee was replaced by a younger employee but that "younger employees were treated more favorably." *Roper*, 47 F.3d at 926; *cf. Oxman*, 846 F.2d at 455; *accord, Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir.1994).[6] This standard is consistent with the *McDonnell Douglas* approach because it "requires an employer that releases a protected employee while simultaneously hiring (or not 'bumping') younger employees ... to explain its actions without forcing the protected employee to uncover that elusive 'smoking gun.'" *Oxman*, 846 F.2d at 455–56.

Therefore, Collier must prove that Budd treated its younger employees more favorably in order to satisfy the fourth prong under *Roper* and *Oxman*. We believe that he succeeds in doing so. Budd retained the two youngest members of its sales/service force: Nemec and Chilcote. Nemec, the youngest, was given sales duties that he had never previously performed, which apparently was a promotion from his previous position that was limited to service. Two of the three oldest employees, Collier and Shaw, were discharged. Ondos, the oldest (by a year over Collier) was retained—a fact that detracts from the assertion that the older employees were afforded less favorable treatment. Still, the retention of Nemec and Chilcote, the increased responsibilities given to Nemec and the firing of Collier and Shaw

suggest that, overall, Budd did in fact treat its younger employees more favorably during the restructuring. Thus, Collier has successfully stated a prima facie case of age discrimination.

## IV. Proffered Non–Discriminatory Reasons

Budd offers an explanation for why Collier was fired but Nemec and Chilcote were retained. Hutton's affidavit states that Chilcote's technical background made him more qualified than any of the other sales representatives to sell distributor products.[7] In addition, Budd asserts that Nemec's field service experience made him the most qualified candidate for the new, restructured position that combined service and sales. Shaw was terminated because of disappointing sales results, so Budd argues that its decision came down to retaining either Ondos (age 54) or Collier (age 53). Theodore Rutkowski, the President and General Manager of Budd Polychem, testified in his deposition that Budd retained Ondos because, among other reasons, his sales territory had shown more promise than Collier's and thus his contacts were more important.

## V. Pretext

Because Budd has proffered non-discriminatory reasons for his discharge, the burden shifts to Collier to present evidence

v. Gen–Corp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990); *see also Suttell v. Manufacturers Hanover Trust Co.*, 793 F.Supp. 70, 73 (S.D.N.Y.1992).

**6.** The *Oxman* court originally phrased the fourth element in RIF cases as "others not in the protected class were treated more favorably." *Oxman*, 846 F.2d at 455. This court has since revised the standard to include "younger employees" rather than employees "not in the protected class," because "the ADEA protects older employees from discrimination on the basis of age, not just discrimination in favor of persons under the age of forty." *Roper*, 47 F.3d at 927. Other courts have adopted differing formulations of the fourth element in RIF cases. *See, e.g., Allen*, 33 F.3d at 678 (as fourth element, employee "must present evidence of actions taken by the employer which, if unexplained, are more likely than not based on consideration of impermissible factors"); *LeBlanc v. Great American Ins. Co.*, 6

F.3d 836, 842 (1st Cir.1993) (as fourth element, plaintiff must show that "the employer did not treat age neutrally or that younger persons were retained in the same position") (*quoting Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104, 1111 (1st Cir.1989)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Mitchell*, 967 F.2d at 567–68 (employee states prima facie case in RIF case "(1) by demonstrating that he was in the protected age group and was discharged, (2) by showing that he was qualified for another position at the time of discharge, and (3) by producing circumstantial or direct evidence ... that the employer intended to discriminate on the basis of age").

**7.** Hutton's affidavit describes distributor products as "conveyor components and buckets ... [that] are not sold directly to customers but are instead sold to distributors who in turn sell them to customers in conjunction with related products made by other companies."

of pretext. *See DeLuca*, 53 F.3d at 797. To avoid summary judgment, Collier must either "present direct evidence that his age ... played a role in the company's decision" or "create a genuine issue of [material fact regarding] the sincerity of the proffered reasons for his discharge." *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 502 (7th Cir.1992); *see also DeLuca*, 53 F.3d at 797; *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1163 (7th Cir.1994). Collier offers no direct evidence that Hutton or Rutkowski possessed an intent to discriminate; thus, he may avoid summary judgment only by attacking the credibility of Budd's proffered reasons. He must show either " '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [his] discharge, or (3) that they [the reasons] were insufficient to motivate [the] discharge.' " *Cliff v. Board of School Commissioners*, 42 F.3d 403, 412 (7th Cir.1994), *quoting, McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993). Motions for summary judgment in employment discrimination cases must be approached "with added rigor," because credibility and intent are often central issues. *Courtney v. Biosound*, 42 F.3d 414, 418 (7th Cir.1994). "[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Id.*

▮▮▮▮▮ In his deposition testimony, Collier responded to Budd's proffered reasons for retaining Nemec and Chilcote rather than him. A party's own deposition "can constitute affirmative evidence to defeat a summary judgment motion." *Courtney*, 42 F.3d at 418; *see also Sarsha*, 3 F.3d at 1041 (7th Cir.1993).[8] Budd argues that Chilcote was retained because of his knowledge of distributor products. Collier testified that, in the early to mid–1980s, 20 to 30 percent of his time was spent selling distributor products. Although he admitted that he did not know as much about distributor sales as Chilcote,

Collier asserted that he was qualified to perform Chilcote's duties and that "it would not take too much to be able to" bring his knowledge of distributor products up to date and to establish the necessary contacts on the West Coast.[9] In addition, Collier presented evidence that his overall sales figures were better than Chilcote's.[10]

Collier also replied to Budd's assertion that Nemec was better qualified to perform in the restructured position that combined sales and service. Collier testified that he was trained to perform field service work and that other salesmen who performed service were given the same training as he. He acknowledged, however, that he had not personally installed some of the company's newer products. Finally, he speculated that Nemec's experience with construction work before coming to Budd made Nemec "maybe a little bit" more qualified to perform field service work.

Although the matter is certainly close, we believe that Collier casts sufficient doubt on Budd's proffered reasons to make summary judgment inappropriate. Collier's testimony concerning his qualifications and experience specifically addresses Budd's assertions that Nemec and Chilcote were more qualified. *Cf. La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1414 (7th Cir. 1984) (evidence of pretext must specifically address employer's proffered reason for discharge). Collier asserts that he was a better salesman than Chilcote and that he could quickly acquire the knowledge and contacts necessary to sell distributor products on the West Coast. This calls into question Budd's contention that Chilcote, who is thirteen years younger than Collier, was retained because of his expertise in distributor sales. In addition, although Collier admitted that Nemec may have been slightly better qualified to perform field service, he asserts that

8. Collier must support his allegations of pretext with "materials of evidentiary quality." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67 (7th Cir.1995). Thus, the courts may only consider testimony that is based on personal knowledge and otherwise conforms with the rules of evidence. *Id.* at 68.

9. Collier testified that establishing the contacts would require "two to three trips" and would take "a year or less."

10. For the fiscal year 1991, Chilcote met 38.2% of his sales quota, while Collier met 43.4% of his target.

he was qualified to perform field service as well. Budd's explanation for why it chose Nemec for the new, combined sales/service position is that he was a more experienced serviceman. If believed, Collier's testimony establishes that Budd fired an experienced salesman who could also perform service while retaining a perhaps slightly better serviceman who had no sales experience but happened to be fourteen years younger. Given these facts, a jury could rationally infer that age played a role in the decision to discharge Collier.

We also find it relevant that Budd has produced very little evidence to support its proffered reasons. Budd did not offer, for example, a detailed description of the new sales/service position and specific facts about Nemec's background and/or experience (contrasted to Collier's background and experience) that would support the company's assertion that Nemec was more qualified for the job. In addition, Budd did not produce evidence specifically showing how Chilcote's technical background was superior to Collier's, nor did it provide an explanation of why a superior technical background is helpful in selling distributor products; instead, we are left with Hutton's assertion that a technical background is important. Essentially, Budd asks the court to take Hutton and Rutkowski's word that they believed that Chilcote and Nemec were more qualified than Collier.

We note that a discharged employee who claims discrimination may not avoid summary judgment in every case simply by asserting that he was qualified for his position. *See Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir.1995). Rather, he must create at least some doubt that the employer honestly believed its proffered reasons. *Id.; see also Sample v. Aldi Inc.*, 61 F.3d 544, 549 (7th Cir.1995); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995). The plaintiff must "specifically refute the facts which allegedly support the employer's" proffered reasons. *Sirvidas*, 60 F.3d at 378. If the employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses. In the instant case, Collier has presented evidence that he could perform the specific tasks (field service and distributor sales) for which Hutton and Rutkowski claim they needed Nemec and Chilcote. The resolution of Collier's claim thus depends on whether Hutton and Rutkowski's testimony is to be believed. This credibility judgment is best left to the finder of fact. *Courtney*, 42 F.3d at 423–24 (where the evidence "viewed in the light most favorable to [the plaintiff] ... raises a question of fact as to the believability [of the proffered reasons] ... [t]he 'ultimate question of discrimination' ... is best resolved by the trier of fact, whose function it is to choose among competing inferences and make credibility determinations"); *see also Saint Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) ("[R]ejection of the defendant's proffered reasons[ ] will permit the trier of fact to infer the ultimate fact of intentional discrimination.").[11] Because Collier has cast sufficient

---

11. This court has held that the Supreme Court in *Saint Mary's* adopted a version of the "pretext-only" rule that allows (but does not require) a jury to find intentional discrimination if the employer has offered false or pretextual reasons for the discharge. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123–24 (7th Cir.1994); *see also Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 522 (7th Cir.1994). Under the pretext-only rule, rejection of the employer's proffered reasons is sufficient to permit a finding of discrimination; "no additional proof of discrimination is required." *Anderson*, 13 F.3d at 1124, *quoting Saint Mary's*, —— U.S. at ——, 113 S.Ct. at 2749; *see also Loyd*, 25 F.3d at 522 ("The trier of fact may infer intentional discrimination from its disbelief of the reasons put forward by the defendant and the elements of the prima facie case

alone but is not required to do so."). The majority of other circuits to address this question have endorsed this version of the pretext-only rule. *See Waldron v. SL Industries, Inc.*, 56 F.3d 491, 495 (3d Cir.1995); *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1557 (11th Cir.1995); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir. 1995), *cert. petition filed*, 64 U.S.L.W. 3068 (U.S. July 3, 1995) (No. 95-27); *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994); *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir.1993); *but see Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir.1994) (employee must present additional "evidence capable of proving that the real reason for his termination was discrimination based on age" in order to recover); *Rhodes v. Guiberson Oil Tools,*

doubt on Budd's explanation of its decision to permit a finding of intentional discrimination, the district court's decision to grant summary judgment to Budd was not appropriate. Therefore, we reverse and remand the judgment for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

39 F.3d 537, 543–45 (5th Cir.1994) (simply disproving proffered reasons is not sufficient to allow finding of age discrimination), *reh'g en banc granted,* 49 F.3d 127 (5th Cir.1995).