**Martin RABINOVITZ, Plaintiff,**

v.

**Hon. Federico PENA, Secretary of Transportation, United States Department of Transportation, Defendant.**

No. 94 C 1703.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

Leslie Ann Jones, Johnson, Jones, Snelling & Gilbert, Chicago, IL, Sheribel F. Rothenberg, Chicago, IL, for plaintiff.

Daniel Edward May, United States Attorney's Office, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant Federico Pena ("Pena") for summary judgment. For the following reasons, the motion is granted.

### I. BACKGROUND [1]

Plaintiff Martin Rabinovitz ("Rabinovitz") unsuccessfully applied for two different managerial positions at the Federal Aviation Administration ("FAA"). In Count I of his Complaint, Rabinovitz alleges that the FAA denied him the positions because of his age and religion. In Count II, he alleges that the FAA constructively discharged him in retaliation for filing charges with the Equal Employment Opportunity Commission ("EEOC"). Defendant Pena contends that he is entitled to judgment as a matter of law because Rabinovitz cannot establish a *prima facie* case of discrimination or retaliation and has failed to proffer sufficient evidence to show that the FAA's reasons for his non-

---

1. The following facts are drawn from the parties' statements of facts submitted in compliance with Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois.

selection were pretextual. After a review of the following facts and the applicable case law, the court agrees that the instant case warrants summary judgment.

Rabinovitz worked for the FAA at the Great Lakes regional office from 1976 until October 31, 1992, the date he alleges the FAA constructively discharged him. Rabinovitz was a real estate contract officer. Rabinovitz is of the Jewish faith and was 65–years–old in 1992.

In June 1990, Rabinovitz applied for one of two vacancies within the Logistics Division of the FAA. Prior to applying for the position, Rabinovitz's supervisors rated him as "exceptional" on each yearly merit review. The position for which Rabinovitz applied was termed a Supervisory Realty Specialist ("SRS").[2] Pursuant to FAA procedures, Rabinovitz submitted the proper SF–171 application form and written statements of knowledge, skills, abilities and other characteristics ("KSAOs") to demonstrate to a merit promotion panel[3] ("MPP") that he met the qualifications of the job.

The MPP was composed of Janice Duckworth ("Duckworth"), an administrative officer in the Logistics Division, Barbara Dettmer ("Dettmer"), the civil rights staff designee whose responsibility was to ensure that no unlawful discrimination takes place during the selection process, and Gloria Ostrand ("Ostrand"), a personnel specialist familiar with the MPP rating process. Since all but one of the FAA employees possessing the necessary technical knowledge applied for the job, the branch manager designated Duckworth to fill-in as the technically-knowledgeable participant of the MPP. However, Duckworth was directed to discuss any technical questions that arose in an interview

with the Real Estate branch manager, Robert Puoci. The MPP reviewed the responses and rated each applicant by first determining whether the applicant met the job requirements, and then assigning each applicant a score based on the written KSAO responses.

The individuals eventually selected for the managerial positions received scores of 30 and 25 points. The MPP found Rabinovitz to be a qualified applicant and assigned Rabinovitz a score of 21 out of a possible 30 points. Rabinovitz's score was the lowest of the five qualified applicants for the position. Both Dettmer and Duckworth testified that there were no discussions of age or religion during the rating deliberations.

After the MPP assigned each applicant a score, two FAA supervisors, Glen Timmerman ("Timmerman") and Robert Puoci ("Puoci"), interviewed the five qualified applicants. Timmerman and Puoci asked questions concerning managerial issues, supervisory and personnel policies, and the FAA's affirmative action program. After the interview, Timmerman and Puoci ranked the five applicants. Both ranked Rabinovitz last.

After the MPP point designation and the interview stage, the Manager of the Logistics Division, Sandra Libby ("Libby"), was required to select the individuals to fill the two vacancies from the five applicants. Libby took no part in the previous MPP and interviewing process, and Libby did not know Rabinovitz prior to September 1990. Libby prepared a document comparing the applicants' SF–171 forms, comments by Timmerman and Puoci, the applicants' written KSAOs, the MPP rating panel evaluation, references from various managers in FAA, and her own personal observations of the

2. A supervisory realty specialist is responsible for supervising lower graded realty/contract specialists for the acquisition of all property and utilities requirements and serves as a senior staff advisor in all real property acquisitions and utilities matters [in a geographic area]." In order to qualify for the position, the FAA required each applicant to possess the following skills: (1) the ability to plan, organize and direct activities and assignments; (2) knowledge of all applicable real property laws and regulations; (3) the ability to make decisions and recommendations and apply human relations skills to the work environment; and (4) the ability to communicate verbally and

in writing. An applicant did not need an undergraduate college degree. To prove that he or she met the requirements, the FAA required each applicant to submit a written response as to why that individual was qualified. These responses were known as "KSAO" statements.

3. The merit promotion panel is made up of at least three individuals. One member of the panel must possess the technical knowledge required of the applicants, and another must be a member of the FAA's civil rights staff.

candidates. In October 1990, without request and before Libby made her final determinations, Rabinovitz gratuitously informed Libby that he was a member of the Jewish faith. No other applicant mentioned a religious membership or faith. No interviewer ever inquired.

On November 18, 1990, Libby selected Donald Russo ("Russo"), age 41, and Robert Sipek ("Sipek"), age 37, for the two supervisory realty specialist positions. Before publishing her selections, Libby consulted with her predecessors at the Logistics Division, Thomas Busker ("Busker") and James Washington ("Washington"), as to whether her selection decisions were sound. Both Busker and Washington agreed with her decisions. Libby was unaware of any of the other four applicants' religious preferences at the time of selection. Libby testified that she chose not to select Rabinovitz for two main reasons: because Rabinovitz's MPP rating was the lowest of the five candidates and because his interview responses were weak in the areas of supervisory experience and human relations. Libby further testified that when making her selections, she looked at the "big picture." Rabinovitz construes subjectively this statement to mean that "an old Jew like [him]self did not fit in," and is evidence of illegal discrimination. Libby personally told Rabinovitz of her selections and offered to assist him in his "promotability" by providing additional management training. Rabinovitz refused.

Rabinovitz later filed the first of two formal complaints of discrimination with the FAA on December 10, 1990. This complaint alleged that Libby based her decision not to select Rabinovitz for the SRS position on his age and religion instead of his merits.

In late November 1990, another position within the Logistics Division became vacant. The person holding this position, termed Realty Officer ("RO"), would supervise the two SRS positions for which Rabinovitz was denied. The position involved responsibility for planning, organizing, and directing the activities of the Real Estate Branch and determining regional program policy goals and plans as well as advising higher management officials in the areas of real property and utili-

ties. The individual selected for the RO position would be responsible for supervising six realty specialists and a secretary.

Rabinovitz applied for the position along with Russo and Sipek. Rabinovitz was among eleven of the thirteen applicants found qualified by the MPP and whose names were forwarded for selection. The MPP was comprised of Clark Young ("Young"), a civil engineer having the technical knowledge required by the job, Lynette Coleman ("Coleman"), a member of the civil rights staff, and Duckworth, designated by the Human Resources Division as the personnel member of the panel. Duckworth testified that the applicants' ages and religions were not discussed and had no affect on the MPP rating.

Neil Johnson ("Johnson"), an engineer from Airway Facilities Division, and Michael Landon ("Landon"), the Logistics Division's Acquisition Branch Manager, interviewed the eleven qualified applicants in February 1991. Libby observed the interviews but remained silent. Both Landon and Johnson found that Rabinovitz was not the most qualified candidate of the eleven. Instead, Landon and Johnson both recommended Darrel Shepack ("Shepack"). Landon testified that although Rabinovitz had a significant amount of expertise in his field, he did not exhibit an expertise as a supervisor or manager. Johnson testified that Rabinovitz lacked sufficient knowledge of the various tasks and duties of a manager. Both Johnson and Landon testified that neither Rabinovitz's age nor his religion was a factor in their decision.

On April 5, 1991, Russo, now Rabinovitz's new supervisor, rated Rabinovitz "fully successful," which is one rating lower than "exceptional." Since Rabinovitz did not receive an "exceptional" rating, he did not receive a one-time $500 bonus given to those employees given an "exceptional" or "outstanding" review. Russo testified that the relatively lower rating was based on Rabinovitz's work, his skills in real estate, and his weaknesses in computer skills. This was Russo's first time rating Rabinovitz. As such, Russo was unaware of Rabinovitz's earlier ratings and denied basing the ratings on Rabinovitz's age or religion. Rabinovitz asserts the drop in

rating follows Russo's discriminatory attitude towards older and Jewish individuals.

Libby made her RO selection on April 7, 1991. After consideration of the MPP rating, the interview scores, and his SF–171 forms, Libby selected Shepack. Libby stated that Shepack had a diversified and solid technical background and many years of supervisory experience. Libby chose not to select Rabinovitz because he lacked the skills required of a supervisor or manager. Libby testified that Rabinovitz's age and religion were not a consideration in his non-selection. Libby again notified Rabinovitz of her decision to select Shepack. Libby met with Rabinovitz personally. Libby told him that she would provide additional management training to enhance his chances for further advancement. Again, Rabinovitz refused.

On April 19, 1991, Russo informed Rabinovitz, after a meeting in Libby's office, that within the office setting he was not to talk to anyone about anything except business; that he was not to leave the office for any reason without reporting to Russo; to limit his breaks to 20 minutes; and to no longer use the branch secretary. Shepack stated that these limitations were due to Rabinovitz's frequent abuse of breaks, during which he would roam the halls and his whereabouts were unknown. As to the use of the office secretary, Shepack stated that he and Russo told all branch employees not to use the secretary in an effort to give them an incentive to use the assigned computers. With regard to the 20 minute break limit, Rabinovitz admitted at a deposition that the limit was government policy and that the policy was neither discriminatory nor retaliatory.

Rabinovitz filed a second formal discrimination complaint on May 13, 1991, alleging that he was denied the RO job due to his age or religion. Rabinovitz testified that at some point after he filed the complaint, Shepack and Russo assigned him to an out-of-town project on the same day that an EEOC examiner came to his office to begin investigating the charges. However, Shepack testified that he sent Rabinovitz to perform duties and functions that were in Rabinovitz's particular area of responsibility.

Beginning in January 1992, the FAA employed a new "flex time" policy which allowed its employees to arrange a convenient eight-hour schedule. Rabinovitz first requested to work from 6:30 a.m. until 3:00 p.m. for health reasons. Shepack granted the request. But later, Rabinovitz requested to begin work even earlier, at 6:00 a.m. Shepack denied the change because, according to Shepack, he had a limited work force and the regional administrator required a technical employee to be at work at all times from 7:30 a.m. until 4:30 p.m. Accordingly, Shepack decided to bar any technical employee from starting before 6:30 a.m. Russo and Shepack did allow other non-technical employees to begin before 6:30 a.m.

In February 1992, Russo rated Rabinovitz as "exceptional," a step above "fully successful." Rabinovitz contends this higher rating was a reaction to the discrimination charges. While on the job, Rabinovitz complained to Shepack publicly about unfair treatment. Shepack replied, "if you don't like it, resign." Several months later, on October 31, 1992, Rabinovitz voluntarily retired from the FAA. According to Rabinovitz, he retired because of "constant unequal treatment by Shepack and Russo which created a demeaning, humiliating, and intolerably hostile work environment."

In support of his claim, Rabinovitz introduced the affidavits of Roger Dooley ("Dooley"), Steven McMahon ("McMahon"), and Chris Cantine ("Cantine"). Dooley stated (1) that Sipek was not qualified for the Supervisory Realty Specialist position, the same position for which Sipek was hired; (2) that Shepack was not qualified for the Realty Officer position, the same position for which Shepack was hired; (3) that Rabinovitz was more qualified for the two positions for which he unsuccessfully applied than Shepack, Russo, and Sipek; (4) that Russo applied the office limitations only to Rabinovitz; (5) that the management viewed Rabinovitz as a "rebel rouser"; and (6) that it was "clear that [Rabinovitz's] supervisor's wanted him to quit." McMahon stated (1) that Rabinovitz was more qualified than the people offered the job vacancies; (2) that "in [his] mind, Rabinovitz was not selected for a supervisory

position because of his age"; and (3) that Rabinovitz was treated much differently by management after he filed discrimination charges. Similarly, Cantine stated (1) that "Rabinovitz was more qualified [than Sipek] and would have been a good and qualified supervisor"; (2) the office limitations were applied only to Rabinovitz; and (3) that Rabinovitz was once sent out of town on dates an Equal Employment Opportunity investigator was scheduled to visit the office.

The FAA does not request nor keep records of its applicants' and employees' religious affiliation.

## II. *DISCUSSION*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 930 (7th Cir.1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The summary judgment "standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). Yet, the standard does nothing to alter the burden of proof. "If the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact. *Sample v. Aldi, Inc.*, 61 F.3d 544, 547 (7th Cir.1995). The court must view the "record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Id.* at 546.

The court now turns its attention to the merits of Defendant Pena's motion. In general, an employee may be terminated for "any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 279 (7th Cir.1995). The Age Discrimination in Employment Act ("ADEA") and Title VII are examples of such proscriptive statutes. The ADEA[4] makes it unlawful for employers to engage in the following conduct:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). The prohibitions under ADEA are limited to those who have attained the age of forty or older. 29 U.S.C. § 631(a); *Collier v. The Budd Co.*, 66 F.3d 886, 891 n. 2 (1995). Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice to use an employee's religion as a ground for an employment decision, 42 U.S.C. § 2000e–16(a), and to discharge an employee for opposing "any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §§ 2000e–2(a)(1),3(a).

---

4. Congress enacted the ADEA primarily to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). "The ADEA, enacted in 1967 as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide." *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, ——, 115 S.Ct. 879, 881, 130 L.Ed.2d 852 (1995).

## A. Failure to Promote Based on Age and Religion

■ Rabinovitz may attempt to prove his ADEA and Title VII claims in either of two ways. Rabinovitz "may either present direct evidence of discrimination or follow the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973)." *Collier*, 66 F.3d at 889; *see also Sample*, 61 F.3d at 547. Rabinovitz relies on the *McDonnell Douglas* burden-shifting method of proof.

■ The burden-shifting method includes three phases. First, Rabinovitz must establish a *prima facie* case of age and religious discrimination. "To establish a prima facie case for a failure to promote," whether it be due to his age or religion, Rabinovitz "must show that (1) he is a member of a protected group; (2) he applied for and was qualified for the position sought; (3) [the FAA] rejected him for the position; and (4) [with regard to religious discrimination, the FAA] granted the promotion to a person whose [religion] was different than [Jewish]," *Sample*, 61 F.3d at 548, and, with regard to the ADEA, that younger employees, who may or may not be over forty years of age, received the job or received favorable treatment. *Roper v. Peabody Coal Co.*, 47 F.3d 925, 927 (7th Cir.1995); *Kralman v. Ill. Dept. of Veterans' Affairs*, 23 F.3d 150, 154–55 (7th Cir.1994).

■ Once Rabinovitz establishes a *prima facie* case, a rebuttable presumption is created that the employer's decision not to promote Rabinovitz was based on the "consideration of impermissible factors." *DeLuca v. Winer Industries*, 53 F.3d 793, 797 (7th Cir.1995). Therefore, "the burden of production [—not proof—] then shifts to the em-

ployer to articulate a legitimate, nondiscriminatory reason for its action." *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 377–78 (7th Cir.1995). "If a legitimate explanation is provided, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for age [and religious] discrimination." *Id.* at 378. Thus, the ultimate burden of persuasion rests with, and never shifts from, the plaintiff at every point in the litigation process. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——–——, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).[5] Plaintiff must prove " 'that he would not have been discharged "but for" his employer's motive to discriminate against him because of his age.' " *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209 (1995); *Karazanos v. Navistar Int'l Trans. Corp.*, 948 F.2d 332, 335 (7th Cir.1991) (quoting *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984)); *see also Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1219 (7th Cir.1991).

■ Rabinovitz alleges that the FAA neglected to select him for two different supervisory positions based on age and religious discrimination. Rabinovitz provided ample evidence to establish a *prima facie* case for both age and religious discrimination: (1) he is of the Jewish faith and over the age of 40; (2) he applied for both positions and was deemed qualified by the FAA; (3) he was not selected for either of the two positions; and (4) the three chosen selectees were not Jewish and were younger than Rabinovitz.

■ In response to the *prima facie* case, the FAA articulated a legitimate, non-discriminatory reason for selecting individuals other than Rabinovitz: that all three selec-

---

**5.** As observed by Judge Posner in *Russell v. Acme–Evans Co. et al.*, 51 F.3d 64, 70 (7th Cir. 1995), the court recognizes that this asymmetrical burden places discrimination plaintiffs at a disadvantage. This disadvantage may be particularly poignant where, as here, the plaintiff faces a highly-funded and bureaucratic opponent, such as an agency of the federal government.

As in *Russell*, this court does *not* find that the FAA did not discriminate against Rabinovitz; rather, it finds that Rabinovitz has failed to pres-

ent sufficient evidence to defeat the motion. *See id.* Still, as noted in *Russell*:

> [T]here is nothing within our power . . . that would lighten the burden of the employee without depriving the employer of procedural rights conferred upon him by settled law. And these procedural rights are not to be thought merely irksome obstacles to truth and justice. They are necessary to distinguish the real from the spurious cases of discrimination.

*Id.* at 71.

tees exhibited better supervisory and managerial skills, thus, they were better qualified than Rabinovitz. The sole remaining issue is whether Rabinovitz has provided sufficient evidence to prove that the FAA's reason is pretextual.

■ To prove that the FAA's reason is pretextual, i.e. "phony," Rabinovitz must show that the FAA does not "honestly believe in the reasons it offers [to justify the non-selection], not whether the FAA made a poor business decision." *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1145 (7th Cir.1994). Summary judgment is inappropriate only if Rabinovitz provides "enough evidence from which a reasonable fact-finder could infer that [the FAA's] proffered reasons for terminating [him] were false and that he was actually [passed over] because of his age [and religion]." *Sirvidas*, 60 F.3d at 378. However, Rabinovitz has not provided enough evidence to create a genuine issue of fact as to the FAA's motives for hiring others for the two positions; there is no evidence to show that the FAA's reason was false or that Rabinovitz was passed over because of age or religion.[6] Therefore, summary judgment must be granted.

*1. Supervisory Realty Specialist Position*

The evidence shows that Rabinovitz applied first for an SRS position. Rabinovitz took part in a competitive bidding process enacted by the FAA. An unknown number of people applied for the position. In addition to his application, Rabinovitz submitted written responses to show his knowledge, skills, abilities, and other characteristics. Of the sum of applicants, an MPP found Rabinovitz to be one of five qualified applicants.

A fact worth noting, the MPP included a civil rights staff designee whose role on the panel was to ensure that employment discrimination does not occur. The MPP ranked the five qualified applicants. Rabinovitz was rated last. All three of the members stated in affidavit form that age and religion bore no part in the rating process

and that they were unaware of Rabinovitz's religious preference. Two supervisors then interviewed the five qualified applicants. The questions posed to the applicants focused on managerial and supervisory issues. Both supervisors rated Rabinovitz last. Both supervisors also stated that age and religion were of no importance in their decision and that they had no knowledge that Rabinovitz was of the Jewish faith.

Libby then made the final decision, and found that although Rabinovitz had the requisite technical real estate expertise, as shown by his yearly "exceptional" reviews, he did not have the necessary managerial skills for the position. Libby did know of Rabinovitz's religion. She did not request such information. For his own reasons, Rabinovitz volunteered his religious affiliation. Prior to making her decisions known, Libby asked two other supervisors whether her decisions were sound. Both supervisors concurred with her decision to select Sipek and Russo, and she subsequently published her choices. Each step of the selection process was carefully documented and corroborates the testimony of those who took part in the decision-making procedures.

■ In response to the documents and testimony provided by the FAA, Rabinovitz provides affidavits of several co-employees opinion that Rabinovitz was the most qualified for the job and that they believe, without instances of proof, that Rabinovitz was not selected due to his age and religion. However, these affidavits merely offer others' value judgments as to the managerial skills of Rabinovitz. These contrary assessments of Rabinovitz's skills, however, are irrelevant. The court need not make a determination as to whether the refusal to select Rabinovitz was a prudent business practice or based on incorrect information. Instead, the issue of pretext focuses on the question of whether the employer honestly believes in the reasons it asserts. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992). As often cited:

---

6. In attempting to support his claim, Rabinovitz did produce the affidavits of three of his colleagues. The court notes that the statements of inferior employees need not be considered as

probative of intent to discriminate on the part of the decision-maker. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 235 n. 1 (7th Cir.1992) (citation omitted).

[This court does] "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). "No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.; Smith*, 876 F.2d at 1321 (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)) (brackets in original).

Rabinovitz also claims that Libby's reference to a "big picture" when making her selections is evidence of her discrimination against older Jewish individuals. This conclusion, however, involves an illogical "jump." "A party to a law suit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." *Palucki v. Sears Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989). "Inferences and opinions must be grounded on more than flights of fancy, speculation, hunches, intuitions or rumors and discrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by affidavits speculating about the defendant's motives." *Rand*, 42 F.3d at 1146. If a court were to hold the contrary, "[t]here would be no summary judgment in age discrimination." *Id.*

Drawing all reasonable inferences in favor of the non-movant, Rabinovitz, the reasonable inference which can be drawn from the evidence is that Rabinovitz lacked the skills required of FAA managers and supervisors, the skills which might have been gained had Rabinovitz attended the management training courses suggested by Libby but refused by Rabinovitz. *See Collier v. The Budd Co.*, 66 F.3d at 890 (summary judgment precluded when an employee is willing to acquire skills necessary for the position, but the employer offered only general assertions of non-discrimination in support of its hiring of younger employees). Nothing in the record casts doubt on Libby's

motives as to selecting younger applicants not of the Jewish faith. Both selectees were more qualified and, thus, more appropriate choices for the positions. Rabinovitz offered no statistical evidence as to the numbers of either older or Jewish employees who have been "passed over" for promotions. Rabinovitz supplied no information suggesting that the individuals involved in the unanimous decision not to select Rabinovitz (specifically Duckworth, Ostrand, Dettmer, Timmerman, Puoci, Libby, Busker and Washington) based their decisions on his age and religious preference. The only evidence Rabinovitz offers the court is his own self-serving testimony that the decision-makers possess improper motives and the opinions of others that he was more qualified than those selected. This evidence is insufficient to withstand summary judgment.

### 2. Realty Officer Position

In the same month that Libby chose not to select Rabinovitz for the Supervisory Realty Specialist ("SRS") position, a new position became vacant. This position, a Realty Officer position, was essentially the supervisor to the SRS position. Of the thirteen applicants for the position, the MPP found eleven to be qualified. Rabinovitz was among those found qualified. In this case, the MPP did not rate the applicants. Rabinovitz was later interviewed by two supervisors. Both supervisors, Johnson and Landon, found Rabinovitz to have the requisite technical knowledge, but to have a deficient knowledge of managerial and supervisory skills. Libby chose not to select Rabinovitz for those same reasons. Libby again offered Rabinovitz the opportunity to take part in management training. Rabinovitz refused.

As in the previous section, the evidence is clear: Rabinovitz possessed the necessary technical real estate expertise yet, according to the decision-makers, Johnson, Landon and Libby, lacked essential management and supervisory skills. Since Shepack exhibited the requisite management skills, he was more qualified and, thus, deserving of the job. Therefore, Libby selected Shepack. The affidavits of Cantine, McMahon, and Dooley are of no importance to this issue

since they involve merely difference of value judgments. Yet, since Rabinovitz has not provided any evidence to support his contention that the FAA promoted others, but not him because of his religion and age, summary judgment is warranted.

### B. Retaliation For Filing Discrimination Charges

■ In Count II of his Complaint, Rabinovitz alleges that the FAA retaliated against him for filing the EEOC charges. To establish a *prima facie* case of retaliation for filing a discrimination complaint, Rabinovitz must prove (1) that he was engaged in protected activity; (2) that he suffered an adverse action by the employer, and (3) that a causal link exists between the protected activity and the adverse action. *Brenner v. Brown*, 36 F.3d 18, 19 (7th Cir.1994).

Rabinovitz did file two employment discrimination charges. Thus, it is undisputed that he established the first element of the *prima facie* case. However, the remaining two elements, whether Rabinovitz suffered an adverse employment action by the FAA and whether a causal link exists between the protected activity and the adverse action, remain contested and require discussion.

Rabinovitz claims that the FAA conducted two retaliatory measures, i.e. adverse employment actions, against him: two of his direct supervisors created an "intolerable work environment" resulting in a constructive discharge; and Russo lowered the yearly review rating which precluded Rabinovitz from receiving a $500 bonus.

The Seventh Circuit defines a materially adverse employment action as a change in terms or conditions of employment beyond

> a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993).

■ The court first addresses whether Shepack and Russo created such an intolerable work environment that Rabinovitz was "forced" to resign. In general, "an employee may not be unreasonably sensitive to his working environment," *Brooms v. Regal Tube Co.*, 881 F.2d 412, 423 (7th Cir.1989), and must seek redress while remaining on the job "unless he is confronted with an aggravated situation beyond ordinary discrimination." *Id.* "[T]o state a claim for constructive discharge, [Rabinovitz] needs to show that [his] working conditions were so intolerable that a reasonable person would have been compelled to resign." *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005 (7th Cir.1994). "Where work conditions are intolerable, under the constructive discharge doctrine a plaintiff can resign, and then bring suit against her employer as if [he was] fired." *Id.* "But to be actionable under Title VII [and the ADEA], the work conditions need to be more than merely intolerable—they need to be intolerable in a discriminatory way." *Id.*

In support of the constructive discharge allegation, Rabinovitz first complains that Shepack and Russo selectively enforced office restrictions and federal government policies solely against him, including restricting him to talking about the business at hand, limiting routine breaks to 20 minutes, and prohibiting him from using the branch secretary. Russo admits that he told Rabinovitz not to speak to others about non-business subjects, but defends the restriction by stating, first, that the restriction is FAA policy, and that Rabinovitz repeatedly abused the office policy by using the office to voice his personal complaints about not getting promoted to a captive audience of co-workers while on the job. With regard to the other restrictions, Russo states that these FAA policies were applied with every member of the office. Although Dooley, McMahon, and Cantine all testified that the office policies were only enforced against Rabinovitz, the record is devoid of any evidence in which Russo or Shepack ever sanctioned Rabinovitz for failing to abide by the policies. Second, Rabinovitz claims that Russo and Shepack disallowed him from exercising his "flex

534

time" option. However, Russo gave a legitimate, non-discriminatory reason; since the FAA requires that each office have a technical person working between 7:30 a.m. and 4:30 p.m., Russo denied all requests made by such technical employees to work before 6:30 a.m. Third, Rabinovitz argues that Russo and Shepack sent him out-of-town on business the first day the EEOC investigator reported to the office to begin investigating his discrimination claim. The court acknowledges that neither Russo nor Shepack gave a valid reason for why they chose Rabinovitz for the out-of-town job or whether they knew that the investigator was scheduled to visit. However, how being away on government agency business at government expense is detrimental and not beneficial is not clear. More importantly, how not meeting with the investigator on the first day of a long, detailed investigation prejudiced Rabinovitz is not shown. Rabinovitz does not claim he was denied any opportunity to meet with the investigator during the course of the long investigative process. He does not claim that the FAA interfered with access to investigators.

However, even viewing the above factual disputes in a light most favorable to Rabinovitz, the court finds that he cannot meet the strict standard required of a constructive discharge plaintiff. Assuming (1) that Rabinovitz was not allowed to speak with anyone except about business, (2) that Rabinovitz had to follow the policy on breaks of 20 minutes, (3) that Rabinovitz had to use his assigned computer rather than the secretary, (4) that Rabinovitz had to start work at 6:30 a.m. instead of 6:00 a.m., and (5) that Russo and Shepack assigned Rabinovitz to a business trip on the same day as the EEOC investigation, Rabinovitz still has not shown that the work environment became so intolerable and hostile that a reasonable person would resign from employment. Rabinovitz has not shown that his working conditions at the FAA were so onerous or demeaning that he was compelled to leave his employment.

The record does make apparent the existence of a clash between several supervisors and a subordinate, not because of Rabinovitz's age, religion, or discrimination charges, but because of the aforementioned job selections and office complaints about them. Both Shepack and Russo successfully applied for the two jobs Rabinovitz did not receive. It is clear from Rabinovitz's testimony that he believed that he was more qualified than Shepack and Russo, and was a disgruntled employee. This is not to say that the work environment was pleasant. Certainly conflicts arose and friction was ever-present in the workplace. However, these three examples of disharmony took place in a sporadic eighteen-month span, and although the examples show that work, at times, was unenjoyable, the environment was not so abominable that Rabinovitz was forced to resign. Rabinovitz provided no evidence of complaints to Russo and Shepack's supervisors. Rabinovitz chose not to seek redress through the FAA chain of command and, instead, chose to resign.

With regard to the lower rating and missed bonus, the court finds that Rabinovitz suffered no demotion, did not lose any retirement or medical benefits, and retained the same job responsibilities and title. Rabinovitz was not entitled to the bonus by the very definition of the word "bonus." A bonus is that "amount paid over what is required; a premium." *The New Webster's Dictionary*, (Lexicon Publications, Inc. 1986), p. 22. Rabinovitz did not receive an unsatisfactory rating, he received a "fully successful" rating. Thus, Rabinovitz failed to establish that he suffered an adverse employment action.

Since the court finds that the work environment was not so intolerable as to equate to a constructive discharge, and that a lower rating and loss of the $500 bonus is not tantamount to an adverse employment action, Rabinovitz has failed to establish the second element of the *prima facie* case. Accordingly, the court enters judgment with respect to Count II against Rabinovitz and in support of Defendant Pena.

Nevertheless, the court will address the third element of the *prima facie* case of retaliation. Presupposing that Rabinovitz did suffer an adverse employment action, the submissions of Rabinovitz do not show facts from which a reasonable person could infer

that the adverse action was because Rabinovitz was of the Jewish faith or 65. Shepack and Russo enforced the office restrictions because of Rabinovitz's previous abuses. Russo denied Rabinovitz's changed request to work one-half-hour earlier due to an FAA policy. Further, Russo was unaware of Rabinovitz's previous yearly ratings and rated Rabinovitz as "fully successful" because Rabinovitz lacked certain computer and real estate skills. The court takes note that the alleged retaliators, Shepack and Russo, are other than the alleged discriminators in Count I. Rabinovitz did not name Shepack and Russo in the EEOC complaints, and it follows that Shepack and Russo had no motive personally to retaliate. In sum, even if this court were to find that Rabinovitz suffered an adverse action, there is no factual dispute as to the causal link requirement. Simply put, no such link exists and Rabinovitz's claim must fail.

In granting summary judgment in favor of Defendant, the court is mindful of the Seventh Circuit's most recent holding with regard to age discrimination and the ADEA, *Collier v. The Budd Co.,* 66 F.3d 886. Although the *Collier* court acknowledged that the case represented a "close matter," the court found that the plaintiff cast sufficient doubt on the employer's proffered reasons to make summary judgment inappropriate. *Id.* at 892. However, several distinctions exist between *Collier* and the instant case. First, the employer in *Collier* "produced very little evidence to support its proffered reasons." *Id.* at 893. In the case *sub judice,* the FAA provided a large sum of evidence showing that the many decision-makers did not discriminate due to age and religion, but instead chose not to select Rabinovitz because of his marked lack of managerial skills. Second, the *Collier* plaintiff "presented evidence that he could perform the specific tasks for which [the employer's agents claimed] they needed [the younger, selected employees.]" *Id.* at 893. Yet, Rabinovitz provided no such evidence; the record is replete with evidence that Rabinovitz lacked the requisite managerial skills. Third, the *Collier* plaintiff admitted that although he was more qualified in some areas than the selectees, he was less qualified in others. Yet, the plaintiff was

willing to "quickly acquire the knowledge and contacts necessary to [perform the required duties]." *Id.* at 892. Rabinovitz, on the other hand, repeatedly refused to acquire the necessary knowledge, and instead chose to retire.

### III. CONCLUSION

For the foregoing reasons, the FAA's motion for summary judgment is granted. The court finds that Rabinovitz failed to provide sufficient evidence to raise a genuine issue of material fact as to whether the FAA engaged in unlawful employment practices. Accordingly, the court enters judgment in favor of Pena and against Rabinovitz.

IT IS SO ORDERED.