**Ebrahim M. MORADIAN, Plaintiff,**

v.

**SEMCO ENERGY GAS COMPANY,**
**Defendant.**

**No. 02–73289.**

United States District Court,
E.D. Michigan,
Southern Division.

April 23, 2004.

---

Michael L. Pitt, Cary S. McGehee, Royal Oak, for Plaintiff.

William L. Hooth, Troy, Mark T. Prendeville, Farmington Hills, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

## I. INTRODUCTION

Defendant moves for summary judgment on plaintiff's claim of age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq,* and the Michigan Elliott–Larsen Civil Rights Act (ELCRA), M.C.L. § 37.2101 *et seq.* For the reasons that follow, defendant's motion is DENIED.

## II. FACTUAL BACKGROUND

### A. Procedural History

Defendant SEMCO Energy Gas Company (the "Gas Company"), is a division of SEMCO Energy, Inc. ("SEMCO, Inc."), a Michigan energy company that distributes gas to customers in Michigan and Alaska. Plaintiff Ebrahim Moradian, a Michigan resident, was employed at the Gas Company from December 2, 1998 until his termination on January 28, 2002, at the age of fifty-five (55). On August 12, 2002, plaintiff filed a claim against the Gas Company, alleging that he was wrongfully terminated on the basis of his age in violation of the ADEA and Michigan's ELCRA.

On August 4, 2003, defendant filed a Motion for Summary Judgment, contending that plaintiff was terminated when his position as Vice President of Marketing was eliminated as part of a reduction-in-force ("RIF"). (Def.Br.13.) Plaintiff opposes defendant's Motion for Summary Judgment. Plaintiff argues that he was selected for termination during the RIF because of his age, and that he was replaced as the effective head of the Marketing Department by a younger, substantially less qualified employee, Tim Lubbers (age 35), who allegedly assumed some of plaintiff's former responsibilities. (Pl. Br.17.)

### B. Plaintiff's Employment at Defendant Gas Company

Plaintiff began his employment with the Gas Company in December, 1998, when Carl Porter, then COO of the Gas Company, hired Moradian as Manager of Industrial Marketing. At that time, Lubbers was Director of Marketing, and in a supervisory position above plaintiff. (Moradian, Dep.81.) Porter wanted Moradian "to help develop a state-of-the-art marketing

department" for the Gas Company. (Porter, Dep.39.) Porter was interested in Moradian because of his "very broad experience in marketing," and his "solid skill on negotiating contracts" and revenue-generating deals. (Porter, Dep.39.) Plaintiff's experience included approximately twenty-one years at the Michigan Consolidated Gas Company, at which plaintiff had marketing, supervisory, and administrative responsibilities. (Moradian, Dep.45–57.)

In March of 1999, when a vacancy materialized, Moradian was promoted to Director of Field Service Administration. (Moradian, Dep.90.) In that position, plaintiff's responsibilities included strategic planning, reviewing companies for acquisition, and bringing in revenue through business development deals such as negotiating to avoid bypass threats. (Porter, Dep.40–41.) "Bypass threats," situations where competitors threaten to bypass defendant's gas distribution services and serve customers directly, were a common ongoing problem faced by the Gas Company that fell within the purview of the Marketing Department. (Porter, Dep.41.) In addition, plaintiff continued to manage the four account managers for whom he had been responsible as Manger of Industrial Marketing and continued to work out in the field with customers. (Moradian, Dep.93.)

In August of 1999, Moradian was promoted to Vice President of Marketing, the position he held until his termination. When plaintiff became Vice President of Marketing, Lubbers began reporting to plaintiff. (Moradian, Dep.99.) Both parties acknowledge that Moradian was successful in his position of Vice President of Marketing, and that he received several bonuses for the work he performed while in that position. (Def.Br.7.) Between 1999 and 2002, when plaintiff was terminated, plaintiff's evaluations reflected that his performance exceeded expectations. (Pl. Br.6.)

Defendant contends that Moradian, as Vice President of Marketing, was "primarily engaged" in "special projects" associated with the strategy of "growth through acquisition and diversification" which existed at SEMCO prior to the company's reorganization. (Def.Br.18.) The so-called "special projects" included power plant projects, gas supply projects, exploring opportunities for coal methane gas projects, and working on potential acquisitions for SEMCO. (Def.Br.6.) Defendant contends that Lubbers, as the Director of Marketing, "had primary responsibility for the day-to-day management, supervision and administration of the Marketing Department," and that Lubbers' responsibilities did not change after plaintiff's termination in 2002. (Def.Br.18.)

Plaintiff argues that his responsibilities as Vice President of Marketing were broader than defendant contends, and that the projects he worked on were only "special" in the sense that they were high-level assignments that required his marketing expertise. (Pl.Br.8–12.) His responsibilities allegedly included supervising the department, setting policies and goals, working closely with key account managers, and pursuing large scale revenue generating projects such as negotiating bypass threats. (Pl.Br.17.) In addition, plaintiff evaluated potential acquisitions for the company, along with several other high-level employees. (Pl.Br.9.) Plaintiff alleges that after his termination, plaintiff's marketing responsibilities were assigned to Lubbers, while some of Lubbers' former administrative responsibilities were eliminated. (Pl.Br.17.)

## C. Defendant Gas Company's Reorganization

In 2001, under new leadership, SEMCO announced a change in its business strate-

gy and began restructuring the company. The new plan was directed at achieving "more profitable growth by concentrating on existing lines of business and less on acquisitions." (Def. Br. Ex. K, A New Day: SEMCO Energy Restructures to Implement a New Business Strategy Based on Value Creation.) Under the new plan, bypass threats continued to be a concern to the Gas Company. (Jackson, Dep.39.) SEMCO eliminated or downsized a number of business units, including the Marketing Department of the Gas Company. (Def.Br.10–11.) Ten jobs were eliminated in the Marketing Department, including plaintiff's position of Vice President of Marketing. (Def.Br.11.)

Defendant contends that the cuts in the Marketing Department were made to eliminate "non-essential" job functions which were "not adding value" to the Company. (Def.Br.11–12.) According to defendant, Moradian's position was eliminated because Moradian's responsibilities had focused on "special projects" which were "no longer required" under the "new direction and strategy of the Company." (Def.Br.13.) Moradian's position was also allegedly eliminated because "the reduced Marketing Department no longer required his administrative oversight." (Def.Br.13.) In the reorganized Marketing Department, Lubbers was retained as the Director of Marketing allegedly performing the "same" functions as he had previously performed, including managing the Marketing Group on a day-to-day basis. (Def.Br.14.)

**D. Alleged Age–Biased Statements**

Plaintiff contends that there is direct evidence in the record that his termination occurred as a result of age bias towards older employees on the part of the decision-maker behind his termination, Kosht. Moradian testified that in June of 2001, when Moradian turned fifty-five, Kosht asked Moradian where his "yellow jacket" was. (Moradian, Dep.144.) When Moradian asked Kosht what he meant by the question, Kosht allegedly stated that "when someone became 55 at Consumer Power [Kosht's former employer] they used to wear their jacket and parade around because they become [sic] fire proof and old." (Moradian, Dep.145.) Kosht did not recall the incident. (Def.Br.23.)

Moradian alleges that Kosht consistently referred to plaintiff and himself as "old farts" who should retire. (Pl.Br.19.) One such incident occurred a week or two after plaintiff's termination. Plaintiff and Kosht met at Applebee's Restaurant allegedly because plaintiff wanted to discuss reinstating his job. (Moradian, Dep. 149.) Kosht allegedly referred to plaintiff as an "old fart" after plaintiff mentioned that it was very difficult to find another job. (Moradian, Dep.154.) Moradian also testified that during a meeting which took place "sometimes [sic] in 2001" Kosht referred to Moradian as an "old fart." (Moradian, Dep. 155–156.)

**III. ANALYSIS**

**A. Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). However, the "mere existence of a scintilla of evidence" in support of the nonmovant's position is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. 242 at 252, 106 S.Ct. 2505 (1986). The burden on the moving party is satisfied where there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

**B. Proof Structure for Age Discrimination Claims**

A plaintiff may make out a claim of age discrimination under the ADEA based on either direct or circumstantial evidence of age discrimination.[1] *Manzer v. Diamond Shamrock Chemicals,* 29 F.3d 1078 (6th Cir.1994). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999).

■ Claims based on circumstantial evidence are generally analyzed within the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, in order to survive a motion for summary judgment, a plaintiff must prove, by a preponderance of the evidence, a prima facie case consisting of four elements: (1) plaintiff was a member of the protected class; (2) plaintiff was discharged; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by a younger person. *Mitchell v. Toledo*

*Hospital,* 964 F.2d 577, 582–583 (6th Cir. 1992).

In reduction-in-force (RIF) cases, where an employee is terminated as a result of the elimination of his position, the fourth requirement is modified so that a plaintiff must offer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge" because of plaintiff's age. *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990) (*cert denied* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171). A plaintiff may satisfy the fourth prong by demonstrating that the plaintiff "possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff," or "that the employer made statements indicative of a discriminatory motive." *Id.* The evidence "must be sufficiently probative to allow a fact finder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.*

If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the plaintiff's termination. *Barnes,* 896 F.2d 1457 at 1464 (6th Cir.1990) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). After the defendant's articulation of a nondiscriminatory reason, the burden switches to the plaintiff to prove by a preponderance of the evidence that the defendant's asserted reasons "were not its true reasons, but were a pretext for discrimination." *Id.* at 1464. The ultimate issue in any age discrimination case is whether age was "a determining factor" in the employer's decision to terminate plain-

---

1. The "same evidentiary burdens prevail" for cases brought under Michigan's ELCRA as in ADEA cases, and therefore a separate analysis for the state law claim in this case is not required. *Moody v. Pepsi–Cola Metro. Bottling Co. Inc.,* 915 F.2d 201, 208 (6th Cir. 1990) (citing *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 940 (6th Cir.1987)).

tiff. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 396 (6th Cir.1993).

## C. Prima Facie Case

In this case, plaintiff has satisfied the first three elements of his prima facie case. Plaintiff was over the age of forty at the time of his termination, and the parties do not dispute that plaintiff was qualified for his position as Vice President. Only the fourth prong of plaintiff's prima facie case is at issue. Because plaintiff's termination occurred during a reduction-in-force, plaintiff must meet the heightened standard set out in *Barnes* in order to satisfy the fourth prong of his prima facie case.

### 1. Evidence of Plaintiff's Superior Qualifications to Run the Marketing Department

In the wake of the elimination of plaintiff's position of Vice President of Marketing, Lubbers was retained as the Director of Marketing. Lubbers was not promoted, nor did his job title change. According to defendant, Lubbers continued to perform the same functions—centered primarily on the day-to-day administration and management of the Marketing Department—that he had performed prior to the RIF. (Def. Reply Br. 6.) However, plaintiff argues that after the RIF, Lubbers took on some of plaintiff's former responsibilities, lost some of his administrative functions, and ultimately assumed plaintiff's former position as head of the Marketing Department, a position for which plaintiff argues he was more qualified. (Pl.Br.13.)

█ Lubbers' testimony supports plaintiff's argument. Lubbers testified that after the reorganization he had fewer administrative duties, as the key account managers he had supervised prior to the reorganization started reporting directly within their districts. (Lubbers, Dep.80–81.) In addition, Lubbers no longer had responsibility for administratively overseeing the marketing operations representatives. (Lubbers, Dep.80.) Lubbers also testified that after plaintiff's termination, Lubbers gained new responsibilities, including establishing prices and guidelines for customers, preparing the forecast for the Gas Company, and working on "special projects" related to providing gas transportation services to large customers and prospecting for new customers. (Lubbers, Dep.84.) This testimony regarding the changes in Lubbers' position, taken in the light most favorable to plaintiff, creates a material question of fact as to whether Lubbers effectively replaced plaintiff to run the Marketing Department, and raises the issue of Lubbers' and plaintiff's relative qualifications.

The evidence tends to demonstrate that plaintiff's qualifications to run the Marketing Department of the Gas Company were superior to Lubbers' qualifications. Plaintiff had substantially more years of experience working in the gas industry than Lubbers. Plaintiff's supervisors testified that Moradian had "greater experience" and "knowledge" of the gas industry than Lubbers. (Kosht, Dep.84.) Plaintiff was promoted above Lubbers to the position of Vice President of Marketing because of his greater skill and experience. While working for the Gas Company, plaintiff received better performance evaluations than Lubbers and was awarded bonuses for success on projects not achieved by Lubbers.

Defendant contends that Lubbers had more experience with the day-to-day administration of the Marketing Department, and was therefore sufficiently qualified to manage the reduced Marketing Department. However, because the evidence suggests that the functions of Lubbers' position changed to mirror those of plaintiff's former position, defendant's argument is not persuasive. Under *Barnes,*

the substantial evidence of plaintiff's superior qualifications set forth in the record is sufficient to satisfy the fourth prong of plaintiff's prima facie case.

### 2. Evidence of Age–Biased Statements

 In evaluating the relevancy of allegedly discriminatory statements, a court must consider whether the statements: (1) were made by a decision-maker; (2) related to the decision-making process; (3) were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir.2002).

In this case, while the "yellow jacket" statement is too ambiguous to raise an inference of age discrimination, the two instances in which Kosht allegedly referred to plaintiff as an "old fart" are probative of age discrimination. The statements were allegedly made by Kosht, the decision maker in plaintiff's termination, and allegedly occurred both before and immediately after the RIF in which plaintiff's position was eliminated. Though the statements taken on their own might be insufficient to prove age discrimination, when coupled with the evidence of plaintiff's superior qualifications, the statements provide additional evidence that the decision to terminate plaintiff might have been motivated by age bias. A fact finder considering the statements in light of the evidence of plaintiff's qualifications could find that defendant intentionally discriminated against plaintiff because of his age.

### D. Proof of Pretext

A plaintiff can rebut a defendant's articulated nondiscriminatory reason by establishing that the asserted reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged con-duct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir.2003) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000)).

In this case, defendant allegedly terminated plaintiff because the Gas Company decided to eliminate plaintiff's position of Vice President of Marketing and the "special projects" plaintiff worked on while in that position. However, the evidence in the record tending to show how the functions of Lubbers' position changed after the RIF to mirror plaintiff's former position raise a material question of fact as to whether defendant's articulated reason for plaintiff's termination are pretextual.

### IV. CONCLUSION

Therefore, defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**