ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Melinda O'Dell
Mooresville, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S02-0501-CV-22

IND. DEP'T. OF ENVTL. MGMT.,

*Appellant (Petitioner below)*,

v.

LYNN C. WEST, ET AL.,

*Appellees (Respondents below)*.

_____

Appeal from the Marion Superior Court No. 13, No. 49D13-0106-CP-914
The Honorable S.K. Reid, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0309-CV-752

_____

**December 6, 2005**

**Sullivan, Justice.**

The State Employees' Appeals Commission ("SEAC") ordered the Indiana Department of Environmental Management ("IDEM") to create new positions for three employees who contend they suffered age discrimination in the course of a reorganization of IDEM. Based on our review of the record, we hold that the employees did not make out a prima facie case of age discrimination because they did not show that they had been replaced by significantly younger persons. We also hold that SEAC has no authority to order the Department to create new positions as a remedy.

**Background**

In 1998, Lynn C. West, Michael J. Dalton, and Phillip E. Wuensch ("Employees") were all employees of IDEM when IDEM announced that it would be consolidating its Office of Solid and Hazardous Waste Management and Office of Environmental Response into a single department called the Office of Land Quality. As part of its restructuring, IDEM reclassified the positions of many of its workers, including those of Employees.

As a result of the restructuring, Employees, at the time all above the age of 40, received new job assignments that did not decrease their pay but did reduce their managerial responsibilities. Specifically:

- Before the restructuring, West held the position of Environmental Manager Supervisor 4. After the department consolidation, she was offered and accepted a position as Senior Environmental Manager 1. West's new position required her to do "staff work" instead of "management work." Additionally, she moved from a larger section chief cubicle to a smaller staff cubicle.

- Before the restructuring, Dalton held the position of Environmental Branch Chief E-7. After the department consolidation, Dalton accepted a position as Senior Environmental Manager Supervisor 3. In Dalton's new position he was no longer responsible for supervising and evaluating section chiefs but instead supervised staff members. Dalton's workspace moved from a private office to a section chief cubicle.

- Before the restructuring, Wuensch held the position of Environmental Manager Supervisor 4, a position where he supervised a group of people. After the department consolidation, he was offered and accepted a position as Senior Environmental Manager 1. This change resulted in Wuensch being placed in a posi-

tion equal to individuals he had previously supervised. Wuensch's workspace was also moved from that of a large section chief cubicle to a smaller staff cubicle.

See Ind. Dep't. Envtl. Mgmt. v. West, 812 N.E.2d 1099, 1102-03 (Ind. Ct. App. 2004).

The Legislature has adopted a statute, the State Personnel Act, Indiana Code Section 4-15-2-1 et seq., that inter alia, provides state employees with a mechanism to challenge involuntary changes in employment status and unsatisfactory conditions of employment, including actions alleged to have been taken against employees on the basis age. Ind. Code § 4-15-2-35 (2004).

Acting pursuant to the State Personnel Act, Employees filed complaints with the State Personnel Department[1] alleging that IDEM had created unacceptable working conditions when it reclassified their jobs and had illegally discriminated against them on the basis of their age. Rachel Scudder, Director of Human Resources Management for IDEM, denied these allegations concluding that the position changes were lateral transfers, not demotions. Employees' age discrimination allegations were then forwarded to Bruce Baxter, the Director of Grievance Administration, who investigated these allegations and found them unsubstantiated. Baxter also concluded the Employees' position changes were lateral transfers and not demotions.

As permitted by the State Personnel Act, Employees then appealed to SEAC.[2] Employees introduced the following evidence in support of their age discrimination allegations at the hearing before SEAC. They presented the testimony of Robert Moran, an

---

[1] The State Personnel Department is a state agency separate and independent from IDEM. See Ind. Code § 4-15-1.8-2 (2004). The heads of both departments are appointed by the Governor. Ind. Code § 4-15-1.8-3 (2004).

[2] SEAC is a bipartisan panel established by law, the members of which are appointed by the Governor. Ind. Code § 4-15-1.5-1 (2004). The mission of SEAC is "[t]o hear or investigate those appeals from state employees as is set forth in [the State Personnel Act], and fairly and impartially render decisions as to the validity of the appeals or lack thereof." Ind. Code § 4-15-1.5-6(1) (2004). It is separate and independent from the State Personnel Department. Ind. Code § 4-15-1.5-8 (2004).

IDEM employee over the age of 40. He testified that on February 4, 1998, he had a discussion with Mary Beth Tuohy, an assistant commissioner, who encouraged Moran and other "senior supervisors to take technical positions and -- to facilitate a reorganization." Tr. at 139. This, according to Tuohy, "would set a good example for other supervisors." Id. Coupled with Tuohy's advice was the implication, according to Moran, that if he did not comply she would use the appraisal system to demote him. Tuohy then stated privately to him that she wanted to bring in "some new blood with fresh ideas. . . ." Id. at 140.

Moran also noted that prior to the restructuring, several people under the age of 40 were promoted to supervisory positions by Tuohy. As far as Moran could tell, "the only common element . . . [was that those promoted] were much younger than the branch chiefs." Id. at 159.

Employees also presented statistical data compiled by IDEM, which indicated that after the merger most of the reclassifications had been borne by employees above the age of 40. IDEM employee Rachel Scudder noted that after becoming aware of this data she felt "it [was] a cause for concern." Id. at 305. The statistical evidence indicated that before the merger, 34 of the 39 managers (87%) were over 40. After the merger, however, only 21 of the 26 remaining managerial positions (81%) were held by employees over 40.

After its fact-finding hearing, Chief Hearing Officer Jack Riggs ("Hearing Officer") found on the basis of this evidence that Employees had proven by a preponderance of the evidence that age bias was a significant factor in their job reclassifications. The Hearing Officer ordered that Employees "be granted good faith consideration and interviews for any vacant effected position and for any future vacancies in effected positions." Appellees' App. at 35.

Both IDEM and Employees submitted objections to the Hearing Officer's Report and Order. SEAC held a hearing after requesting both sides to submit briefs. It then held a regular meeting after which it ordered the Hearing Officer to make changes to his report

and order. SEAC issued its final order on May 9, 2001, essentially adopting the Hearing Officer's Revised Report and Order but ordering that Employees be placed back in the supervisory positions they held before the department consolidation. Concluding its order, SEAC held that:

> The lack of vacant positions shall not be deemed any sort of excuse for failure to immediately implement this Order. The Commission finds that since this matter arises solely due to the unlawful discrimination by [IDEM], that [IDEM] must deal with any double-slotting, layoffs or budgetary impacts from its own resources. Due to Findings of bad faith and considering that [Employees] would have already held these positions for almost two years in the absence of discrimination, the Commission further orders that the probationary period be waived and that [Employees] be immediately granted permanent status in their newly ordered positions.

Id. at 82. In short, SEAC ordered IDEM to create new positions for Employees that did not previously exist.

IDEM filed a petition for judicial review, which the trial court denied before issuing an amended order adopting SEAC's May 9, 2001, order in its entirety. The Court of Appeals affirmed the trial court's decision. West, 812 N.E.2d at 1118. IDEM sought, and we granted, transfer to this Court. Ind. Dep't of Envtl. Mgmt. v. West, 831 N.E.2d 734 (Ind. 2005) (mem.). We reverse.

**Discussion**

This case presents two issues for our determination: (1) whether SEAC was correct in its determination that IDEM improperly took action against the Employees on the basis of their age; and (2) whether SEAC had the legal authority to order IDEM to create new positions for the Employees.

5

# I

IDEM contends that SEAC was incorrect to find that it was guilty of age discrimination under Indiana's State Personnel Act.  In particular, IDEM contends that the effect of the opinion of the Court of Appeals is to place the burden of proof solely on the State to demonstrate it did not discriminate on the basis of age.[3]  Neither the decision of the Court of Appeals nor the State Personnel Act itself articulate a particular evidentiary methodology to use in such cases.

## A

The State Personnel Act provides state employees with recourse and remedies to protect them from adverse employment action taken against them "on the basis of politics, religion, sex, age, race or because of membership in an employee organization. . . ." Ind. Code § 4-15-2-35 (2004).  Similarly, Title VII of the federal Civil Rights Act of 1964, provides protection against "discrimination in employment because of race, color, religion, sex, . . . [and] age. . . ." Exec. Order No. 11478 (1969), reprinted in 42 U.S.C. § 2000e (2003).  While we recognize that this is not a federal Title VII action and federal law is not controlling, we do find the federal approach to Title VII discrimination actions instructive in this matter on the basis of Title VII's similarity to Indiana's State Personnel Act.

The United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), provided an analytical framework that allocates each party's burden of persuasion in employment discrimination actions brought under Title VII.  In an effort to "clarify the standards governing the disposition of an action challenging employment discrimination, . . ." the Court announced that an employee in an employment discrimination action "must carry the initial burden under the statute of establishing a prima facie case of

---

[3] Employees cast this case solely as a "merit" complaint rather than an age discrimination action. We find Employees' distinction immaterial where Employees bring their complaint contending that adverse employment action was taken against them on the basis of their age.

. . . discrimination." Id. at 798, 802. If the employee meets its burden, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802. Finally, where the employer is able to meet its burden, the burden shifts once again to the employee who must demonstrate that the employer's nondiscriminatory reason was merely pretext for its discrimination. Id. at 804. We have already relied on the standard in considering retaliatory actions taken against an employee.[4] See Ind. Civil Rights Comm'n v. Culver Educ. Foundation, 535 N.E.2d 112 (Ind. 1989) (applying the McDonnell Douglas standard in assessing employee allegations of employment discrimination on the basis of retaliatory action taken against them).

The Supreme Court also approved the McDonnell Douglas burden shifting approach in determining age discrimination complaints brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311 (1996) (assuming that the McDonnell Douglas analytic framework should also apply in the context of age discrimination determinations). Under McDonnell Douglas, an employee claiming that age discrimination was a factor in an employment decision where the employee was demoted must prove each of the following by a preponderance of the evidence to make out a prima facie case and trigger the employer's burden: "(1) that he [or she] is a member of a protected age group, [i.e., age 40 or over]; (2) that he [or she] was performing his [or her] job at a level that met his [or her] employer's legitimate expectations; (3) that he [or she] was demoted; and

---

[4] The Court of Appeals has previously used this standard in evaluating an employment discrimination action brought under state law where an employee has claimed that retaliatory action has been taken against him or her. See SSU Fed'n of Teachers, Local 4195 v. Bd. of Dirs., Madison Area Educ. Special Servs. Unit, 656 N.E.2d 832 (Ind. Ct. App. 1995) (applying the McDonnell Douglas analytic standard to employee discrimination case alleging unfair retaliatory action because of employee's activities as a member of an employee union). The Court of Appeals has also applied the standard in other contexts of alleged employment discrimination arising under state law. See Ind. Civil Rights Comm'n v. Weingart Inc., 588 N.E.2d 1288 (Ind. Ct. App. 1992) (evaluating evidence of race discrimination under the McDonnell Douglas rubric); Ind. Dep't of Corr. v. Ind. Civil Rights Comm'n, 486 N.E.2d 612 (Ind. Ct. App. 1985) (applying the McDonnell Douglas standard to assess complaint of gender discrimination); Ind. Civil Rights Comm'n v. Muncie, 459 N.E.2d 411 (Ind. Ct. App. 1984) (using the standard to evaluate allegations of racial discrimination).

(4) that he [or she] was replaced by a younger person."[5] Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (5th Cir. 2000).

This analytic approach, according to the Court of Appeals for the Seventh Circuit, "is a necessary schematic if the real cases of discrimination are to emerge from the 'spurious ones.'" Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir. 1997) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 71 (7th Cir. 1995)). We agree with this rationale, and we now adopt the McDonnell Douglas analytic framework for evaluating cases of alleged age discrimination arising under Indiana Code Section 4-15-2-35.

Justice Boehm argues that the correct approach to take in this particular claim of age discrimination is a modified version of the McDonnell Douglas framework announced in Collier v. Budd Co., 66 F.3d 886, 890 (7th Cir. 1995). That decision held that in reduction in force cases, a plaintiff need not prove that he or she was replaced by a younger employee, but only that younger employees were generally treated more favorably. Id. at 891. After reviewing Collier and a number of cases citing it, we do not think the rule announced in that case is applicable here.

Collier and the cases citing to it all involved reductions in force whereby employees within the protected class were allegedly discharged or laid off because of their age. See Bakke v. Cotter & Co., 984 F.Supp. 1167 (N.D. Ill. 1997) (RIF discharge case analyzing ADEA claim under Collier hybrid paradigm); Driskell v. Continental Cas. Co., 961 F.Supp. 1184 (N.D. Ill. 1997) (same); Matthews v. Commonwealth Edison Co., 941 F.Supp. 721 (N.D. Ill. 1996) (same).

Collier says that "[i]n RIF cases, we do not require a plaintiff to prove that he has been replaced by a younger employee." Collier, 66 F.3d at 890. Its rationale is that

---

[5] With respect to the last element, the Supreme Court cautions that courts should not draw any inference of age discrimination where an employee is replaced with another worker insignificantly younger. See O'Connor, 517 U.S. at 312. However, the Court notes that "the fact a replacement is substantially younger than the [employee] is a far more reliable indicator of age discrimination than is the fact that the [employee] was replaced by someone outside the protected class." Id. at 313.

8

"[g]enerally, when a company reduces or restructures its workforce, it does not simply hire a new person to fill the discharged employee's old position." Id. (emphasis added).

Justice Boehm's separate opinion in this case maintains that the word "restructure" applies to the department merger/consolidation at issue here. But the RIF cases that rely on Collier use the term "restructure" synonymously with terms connoting employee layoffs. See Miller v. Borden Inc., 168 F.3d 308, 313 (7th Cir. 1999) (stating that RIF cases represent an important exception to the standard McDonnell Douglas framework and is warranted where "an employer, in the course of restructuring [its] business, terminates an employee and does not replace the terminated employee. . . .") (emphasis added). See also Driskell, 961 F.Supp. at 1186 (using the term "restructuring" to describe a reduction in force process accomplished through employee layoffs). While Collier is applied in a variety of situations—corporate downsizing, mass layoffs, etc.— we read each of the RIF cases to stand for the proposition that "restructuring" is brought about only through employee layoffs and discharges. None of them involve integrating separate departments without also discharging employees.

The current case is not a reduction in force situation. Employees in the present case were not discharged, nor were they threatened with discharge. At best, they can only claim that they received demotions. IDEM has not engaged in a general program to downsize or layoff workers. It was only effectuating a merger of departments.

Justice Boehm acknowledges that most cases applying the modified approach involve layoffs or discharges but argues that their logic should also be applied to "a reorganization that eliminates some positions without terminating employees." Slip op. at 16. He says this is because "[i]n both situations the critical point is the employee's former position is not filled or no longer exists." Id. We take a contrary view. In a reorganization—at least one like this where none of the Employees were discharged and the positions they held before the reorganization continue to exist under new classifications—the rationale for proving replacement by a younger worker remains with full force precisely because there has been no net reduction in the number of positions.

9

The current case falls under the traditional <u>McDonnell Douglas</u> rubric and we continue our analysis accordingly.

**B**

Our review of SEAC's determination is limited to a consideration of whether there is substantial evidence to support its decision, and whether its decision was arbitrary, capricious, an abuse of discretion, or in excess of its statutory authority. <u>See</u> <u>Ind. Dep't of Envtl. Mgmt. v. Conard</u>, 614 N.E.2d 916, 919 (Ind. 1993). We, however, remain "free to resolve any legal questions that arise from the agency's decision . . . and are not bound by its interpretation of the law because the law is the province of the judiciary." <u>Andrianova v. Ind. Family and Soc. Servs.</u>, 799 N.E.2d 5, 7 (Ind. Ct. App. 2003).

In this instance, Employees' evidence taken separately or in total fails to meet their burden of establishing a prima facie case of discrimination. This is because there is no evidence in the record that satisfies the fourth prong of the traditional <u>McDonnell Douglas</u> paradigm. None of the Employees presented evidence that he or she were replaced by individuals substantially younger than himself or herself.

In the case of Michael Dalton, the position he claims to have been demoted from remained vacant and unfilled by anyone. According to his testimony before SEAC, Dalton had been "working out of class" or performing job duties reserved for persons above his employment level for a number of years. Dalton had been performing job responsibilities of an E-7 level employee, while he was officially classified as an E-6 level employee.

IDEM remedied this discrepancy shortly before the 1999 merger took place. At this time Dalton was given job responsibilities commensurate to his official job classification. Dalton, however, claims that he was demoted when he was not placed in the position of Branch Chief where he would have held the same job responsibilities he exercised

10

when he worked out of class. The position of Branch Chief has remained vacant since September, 1999.

Assuming arguendo that Dalton was demoted in this instance, he does not make out a prima facie showing of age discrimination. Since the position he claims was withheld from him remains unfilled, he cannot point to a substantially younger employee who has been favored to his detriment. Thus, his complaint fails on that basis.

The complaints of West and Wuensch similarly fail to make out a prima facie case of discrimination. Like Dalton, both West and Wuensch were "working out of class" prior to the merger. Both West and Wuensch officially held the position of Environmental Supervisor 4 but performed supervisory duties reserved for employees with higher job classifications. Neither West nor Wuensch filed grievances to correct this discrepancy.

When the merger took place, West and Wuensch, like Dalton, were given job responsibilities and titles commensurate to their official job classifications before the merger. Also like Dalton, and assuming arguendo that the classifications constituted demotions, West and Wuensch cannot point to a substantially younger individual who replaced them in making a prima facie showing.

In West's case, the supervisory position that most closely resembles the one she seeks is now held by Dalton. Dalton is two years younger than West, and both are within the protected class. Such an insignificant age difference is not sufficient evidence to draw the inference that age discrimination has occurred. Neither the record nor Wuensch identifies an individual who assumed his former job responsibilities. Without any evidence that he was replaced by a significantly younger individual, we conclude that Wuensch also has failed to make out a prima facie case of age discrimination.

Employees, nevertheless, point us to statistical evidence compiled by IDEM and presented to SEAC to contend that the department discriminated against employees over

11

40 with respect to promotions after the merger. Specifically, Employees stress the fact that before the merger, 34 of the 39 supervisory managers in their department were over the age of 40, while after the merger individuals over 40 held only 21 of the remaining 26 managerial positions. This represents a drop in percentage for those over 40 in managerial positions from 87% before the merger to 81% afterwards. We are certainly open to the argument that statistical data can be used to make out a prima facie case of discrimination, but find no basis to do so here. A six-percentage point decrease where the sample sizes are 39 and 26, respectively, is simply not statistically significant. Statistical evidence from small samples typically "lacks sufficient breadth to be trustworthy." Parker v. Fed.l Nat'l. Mortg. Ass'n., 741 F.2d 975, 980 (7th Cir. 1984). In fact, it is likely that "[a] small change in the underlying raw data would result in dramatic statistical fluctuations." Id. Under such circumstances, we cannot find that this evidence gives rise to an inference of age discrimination.

Similarly, we find Employees' evidence with respect to Mary Beth Tuohy's comments to Robert Moran regarding the need for "new blood," insufficient to raise an inference of age discrimination. "Standard usage and common sense dictate that . . . 'new blood' means a change." Fortier v. Ameritech Mobile Comm. Inc., 161 F.3d 1106, 1113 (7th Cir. 1998). Moreover, statements like Tuohy's regarding "new blood" do not raise an inference of discrimination and "simply cannot support a determination of age bias," when interpreted either in the abstract or in the context of this case. Id.

Because neither Employees' statistical evidence nor their testimonial evidence regarding Tuohy's statement can support an inference of age discrimination when evaluated separately or when taken in total, we find it insufficient to meet Employees' burden in demonstrating a prima facie case of age discrimination.

## II

The second issue IDEM raises is that SEAC acted outside its scope of authority in fashioning its remedy for Employees. The Department argues that the State Personnel

Act limits SEAC to ordering reinstatement as a remedy, rather than mandating the creation of new jobs as it did in this case. Employees contend, however, that the State Personnel Act grants SEAC discretion broad enough to order such relief. We agree with IDEM that the State Personnel Act provides SEAC with only the authority to order reinstatement in this instance.

SEAC's remedial authority in this matter is outlined in Indiana Code Section 4-15-2-35(b). It directs in relevant part that:

> If [SEAC] finds that the action against the employee was taken on the basis of politics, religion, sex, age, race or because of membership in an employee organization, the employee shall be reinstated to his position without loss of pay.

Ind. Code § 4-15-2-35(b) (2004).

The Court of Appeals relies on both Indiana Code Section 4-15-2-35 as well as Indiana Code Section 4-15-1.5-6, however, to hold that SEAC's remedy was appropriate in this matter. That provision, which outlines the general powers of SEAC provides that:

> The appeals commission is hereby authorized and required to do the following:
> (1) To hear or investigate those appeals from state employees as set forth in IC 4-15-2, and fairly and impartially render decisions as to the validity of the appeals or the lack thereof. Hearings shall be conducted in accordance with IC 4-21.5.
> (2) To make, alter, or repeal rules by a majority vote of its members for the purpose of conducting the business of the commission, in accordance with the provisions of IC 4-22-2.
> (3) To recommend to the personnel director such changes, additions, or deletions to personnel policy which the appeals commission feels would be beneficial and desirable.

Ind. Code § 4-15-1.5-6 (2004). The Court of Appeals found that Subsection (3) in particular gave SEAC the authority to order the creation of new jobs as a remedy for employment discrimination on the basis of age. West, 812 N.E.2d at 1118. Our reading of the statutes differs.

A reading of the plain language of Section 4-15-1.5-6 leads us to conclude that the proper interpretive emphasis should be placed on Subsection (1), rather than Subsection (3). Subsection (1) states plainly that SEAC's power to conduct appeals is governed by the provisions enumerated in Sections 4-15-2 et seq. That chapter under Section 4-15-2-35 expressly limits SEAC's remedial authority and provides only for reinstatement where action is taken on the basis of politics religion, sex, age, race or membership in an employee organization.

Subsection (3) speaks broadly to SEAC's authority to recommend policy to the Pesonnel Department, not to specific cases considered under Subsection (1) or Section 4-15-2-35. Said differently, SEAC's authority under Subsection (3) is independent and unrelated to its appellate authority under Subsection (1). Further, the plain language of Indiana Code Sections 4-15-1.5-6(1) and 4-15-2-35, when read together, unambiguously limits SEAC's remedial power in employment discrimination actions on the basis of age to reinstatement.

**Conclusion**

Having previously granted transfer, we now reverse the trial court's decision affirming SEAC's decision. This case is remanded to the trial court to direct SEAC to dismiss Employees' claim.

Shepard, C.J., and Dickson, J, concur. Boehm, J., concurs in part and dissents in part with separate opinion, which Rucker, J., joins.

14

**BOEHM, J., concurring in part and dissenting in part.**

For the reasons the majority gives, I agree that the State Personnel Act does not authorize SEAC to require IDEM to create positions that do not currently exist.

I do not agree with the majority's conclusions as to a prima facia case of age discrimination. First, I believe the majority adopts an incorrect view of the law applicable to these facts. The majority adopts the federal burden-shifting approach to Title VII discrimination actions as instructive for Indiana's State Personnel Act. I agree that the federal approach enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) should be followed under the Indiana statute. Under this framework a plaintiff claiming age discrimination must make a prima facia showing that: 1) he or she was over 40 years of age; 2) was performing his or her job at a level that met his or her employer's legitimate expectations; 3) was subject to an adverse employment action; e.g., a demotion; and 4) that the adverse employment action gave rise to an inference of unlawful discrimination, for instance, benefiting a significantly younger person. See, e.g., Grabosky v. Tammac Corp., 127 F. Supp. 2d 610, 619 (M.D. Pa. 2000). However, I do not believe that the majority opinion correctly describes the federal approach as applied to the facts in this case. Here we are reviewing a claim of age discrimination that was incurred as a result of a consolidation of departments, not a direct termination.

As explained below, in that context, I believe there is no requirement to show replacement by a younger person. As the Seventh Circuit has explained, the focus in claims of discrimination is "whether the plaintiff has established a logical reason to believe that the [employment] decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition." Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996). Under the proper standard of deference to agency findings, I would conclude that the agency finding that the plaintiffs proved discrimination should be affirmed at least to the extent that the plaintiffs have made a prima facia case.

The majority holds that because none of the employees were replaced with younger individuals they failed to satisfy the fourth prong of the McDonnell Douglas

15

framework and thus failed to make a prima facia showing of age discrimination. The standard for a prima facia case, however, is flexible and is "not intended to be rigidly" applied. Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 567 (11th Cir. 1992). When an employer terminates the employment of a worker within the protected age group in favor of a worker who is much younger and not within the protected age group, then, to prove the fourth prong of the McDonnell Douglas framework, the plaintiff must show that he or she was indeed replaced by an individual substantially younger than himself or herself. See Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919-22 (5th Cir. 2000). However, where the discharge occurred in the context of a reduction in force,[1] "the fourth requirement is modified to require the plaintiff to offer some direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Skalka v. Fernald Envtl. Restoration Mgmt. Corp., 178 F.3d 414, 420 (6th Cir. 1999), cert. denied (internal quotation marks omitted); accord Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000) (fourth prong modified in a reduction in force situation to show substantially younger employees in positions similar to the plaintiff's position were treated more favorably).

The reason for this modification of the fourth prong is that if the plaintiff's former position is not filled or no longer exists it is impossible to prove that a younger person filled the eliminated position. The majority is correct that most cases applying this modified approach to the fourth prong are in the context of a reduction in force. But the logic is equally applicable to situations where a series of lateral or other moves amount to a reorganization that eliminates some positions without terminating employees. In both situations the critical point is the employee's former position is not filled or no longer exists. A demotion is an adverse employment action and may be accomplished without termination and without replacing the position.[2] In my view, modification of the fourth

---

[1] "A RIF occurs when an employer permanently eliminates certain positions from its workforce." Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 693 (7th Cir. 2000).

[2] See, e.g, Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004), cert. denied, 161 L. Ed. 2d 727, 125 S. Ct. 1850 (2005) ("an adverse employment action" under Title VII includes any "ultimate employment decision" which includes "decisions such as termination, failure to hire, or demotion"); White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 797 (6th Cir. 2004) ("A reassignment without salary or work hour changes, . . . may be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, signifi-

prong does not hinge on what type of adverse employment action the plaintiff alleges. Rather, it applies whenever discrimination cannot be proved directly because the plaintiff's former position no longer exists whether that is because the position was eliminated altogether or because its responsibilities, authority or benefits were substantially altered.[3]

I also conclude the evidence was sufficient to support the administrative finding of a prima facia case. The Hearing Officer and the State Employees' Appeals Commission found that "this matter [arose] solely due to the unlawful discrimination by [IDEM]" without dealing with the framework that the majority adopts or the methodology I urge. I would remand this case and shift the burden to IDEM to articulate some legitimate, non-discriminatory reason for their decision to maintain the supervisory status of all of the younger supervisors to the detriment of the older supervisors. A plaintiff may satisfy the fourth prong by demonstrating that the plaintiff "possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff" or "that the employer made statements indicative of a discriminatory motive." Moradian v. SEMCO Energy Gas Co., 315 F. Supp. 2d 870, 874 (E.D. Mich. 2004). The evidence "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir. 1990), cert. denied. Thus, in cases such as this, where the plaintiffs' former positions either were not filled or no longer existed, the plaintiffs are permitted to satisfy the fourth prong of the McDonnell-Douglas framework by showing that they were treated less favorably than younger supervisors as a result of the consolidation.[4]

---

cantly diminished material responsibilities, or other indices that might be unique to a particular situation.'").

[3] See, e.g., Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004) ("Where, as here, the plaintiff's responsibilities were not reassigned to a specific individual, we have said the plaintiff must satisfy the fourth element of the prima facie case by showing 'age was a factor in the employer's decision to terminate.'"); Steward v. Sears Roebuck & Co., 312 F. Supp. 2d 719, 726 (E.D. Pa. 2004) (the plaintiff's duties were absorbed by other employees in a "non-RIF" situation: "the fact that [the plaintiff] was not 'replaced' after his termination is not fatal to establishing a prima facia case of age discrimination. [The plaintiff] can satisfy the fourth prong of McDonnell Douglas by offering evidence that younger employees were treated more favorably.").

[4] See Collier v. Budd Co., 66 F.3d 886, 890-91 (7th Cir. 1995) ("In RIF [reduction in force] cases, we do not require a plaintiff to prove that he has been replaced by a younger employee. Generally, when a company reduces or restructures its workforce, it does not simply hire a new

17

Before the consolidation, IDEM managers Mary Beth Tuohy and Bruce Palin had promoted several employees younger than 40 years old to supervisory positions. The plaintiffs contend that these younger employees, unlike many older employees with more experience and seniority, retained their status as supervisors after the consolidation. The plaintiffs did not receive a decrease in pay. However, they contend that their "decreased management responsibilities, lower personnel classifications, and lesser grade physical office space" constituted a "demotion."

The ultimate issue is whether IDEM intentionally discriminated against the plaintiffs by reason of age. This is a factual determination, and we are to give deference to the factual findings of the administrative agency if the findings are supported by substantial evidence. Ind. Dep't of Natural Res. v. Peabody Coal Co., 654 N.E.2d 289, 292 (Ind. Ct. App. 1996); Hamilton County Dep't of Pub. Welfare v. Smith, 567 N.E.2d 165, 168 (Ind. Ct. App. 1991). I agree with the majority that the statistical evidence is not persuasive if viewed in isolation. As the majority notes, "[t]he statistical evidence indicated that before the merger, 34 of the 39 managers (87%) were over 40. After the merger, however, only 21 of the 26 remaining managerial positions (81%) were held by employees over 40." Because of the small sample the majority held that this statistical evidence "lacks sufficient breadth to be trustworthy." (citing Parker v. Fed. Nat'l Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir. 1984)). This sample size is too small to be sufficient evidence to meet the plaintiffs' prima facia showing of age discrimination. See Coates v. Johnson & Johnson, 756 F.2d 524, 541 (7th Cir. 1985) (statistical evidence based upon small sam-

person to fill the discharged employee's old position. Rather, as was the case here, jobs are often consolidated and/or work is shifted to other existing employees. Thus, at least in the strict sense, the discharged employee has not truly been replaced by anyone. Consequently, the fourth element of the prima facie case in RIF cases is not that the employee was replaced by a younger employee but that 'younger employees were treated more favorably.'"); Vega v. Kodak Caribbean, 3 F.3d 476, 479 (1st Cir. 1993) ("When a reduction in force is involved, a plaintiff may satisfy the fourth element by demonstrating that the employer did not treat age neutrally in shrinking its payroll. This lack of neutrality may be manifested either by a facially discriminatory policy or by a policy which, though age-neutral on its face, has the effect of discriminating against older persons, say, by leading inexorably to the retention of younger employees while similarly situated older employees are given their walking papers."); Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988) ("Evidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent and to require the employer to articulate reasons for its decision.").

ples is generally not probative of discrimination); Haskell v. Kaman Corp., 743 F.2d 113, 121 (2d Cir. 1984) ("For . . . statistical evidence to be probative, . . . the sample must be large enough to permit an inference that age was a determinative factor in the employer's decision.").

In this case, in addition to statistical evidence, the plaintiffs offered two statements by Tuohy to make a prima facia showing of age discrimination. The Hearing Officer for the State Employees' Appeals Commission found:

#12. Mary Beth Tuohy stated on more than one occasion during the reorganization that Respondent needed "new blood" and needed people who could offer "new and fresh ideas."

#13 All six effected [sic] employees over the age of 50 years were moved down in hierarchy.

#14. All seven effected [sic] employees under the age of 40 were either retained as supervisors or promoted.

#15. Of the twenty-three effected [sic] employees between the age of 40 and 49, sixteen were retained or promoted and seven were moved down.

#16. By a preponderance of the evidence, Petitioners have proven that age bias was a significant factor in the reorganization.

Finally, there was evidence that Tuohy urged one of the "demoted" managers to "set a good example" for all of the other supervisors by accepting a position as a toxicologist, and suggested that she could arrange that result involuntarily though the "appraisal system."

The majority concludes that Tuohy's comments to Moran regarding the need for "new blood" and "new and fresh ideas" along with the statistical evidence are not sufficient to raise an inference of age discrimination. The majority relies on a Seventh Circuit case which held that the phrase seeking "new blood," which was made five months before the plaintiff was terminated, did not reflect age bias, it meant to seek "a change." Fortier v. Am. Mobile Comm. Inc., 161 F.3d 1106, 1113 (7th Cir. 1998); see also Beatty v. Wood, 204 F.3d 713, 716 (7th Cir. 2000) (statement of needing "new blood" does not, "in isolation, evidence age-based discriminatory animus"). In contrast, repeated refer-

ence to an older employee as an "old fart" was probative of age discrimination. Moradian, 315 F. Supp. 2d at 876. Also, the Sixth Circuit has found that the statement that a company "wanted younger people . . . and that [plaintiff] was getting too old" was enough to suggest to a reasonable trier of fact that the plaintiff's age was a factor in the minds of the decision makers in the company. Peyton v. Kellermeyer Co., 2004 U.S. App. LEXIS 24107, **12-13 (6th Cir. Nov. 17, 2004). To be sure, these references are more directly discriminatory, but the import of the statements made is largely an inference that may be substantially affected by the demeanor of the witness.

In evaluating allegedly discriminatory statements, a court should consider whether the statements: (1) were made by a decision-maker; (2) related to the decision-making process; (3) were more than merely vague, ambiguous or isolated remarks; and (4) whether they were proximate in time to the act of termination. Peters v. Lincoln Elec. Co., 285 F.3d 456, 478 (6th Cir. 2002). In this case, the statements were made by one of the managers who was in charge of placement and promotions during the consolidation. The Hearing Officer found that the statements made by Tuohy and the statistical evidence supported the alleged discrimination. I believe that these statements, coupled with the statistical evidence, are sufficiently probative to allow a fact finder to believe that the employer made the statements with a discriminatory motive, and treated the younger supervisors more favorably. Particularly on issues that ultimately boil down to an assessment of credibility, we should defer to the factual findings of the Hearing Officer, which were adopted by the administrative agency.

Rucker, J., concurs.